

**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

December 11, 2003

J. William Codinha, P.C.
Melissa Bayer Tearney
Nixon Peabody LLP
101 Federal Street
Boston, MA  002110-1832

**04 CR 1 C 0 0 3 MEL**

Re:  <u>United States v. Metalor</u>

Dear Counsel:

This letter sets forth the agreement entered into between the United States Attorney for the District of Massachusetts, "the U.S. Attorney" and your client, Metalor USA Refining Corporation (the "Defendant" or "Metalor"), in the above-captioned matter. The agreement is as follows:

1.  <u>Change of Plea</u>

On or before November 15, 2003, or at such date as the Court may determine, Defendant shall waive Indictment and plead guilty to an Information to be filed in the District of Massachusetts in substantially the form attached, charging Defendant with Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity in violation of Title 18, United States Code, Section 1957. Defendant is aware that the Information may be duplicitous and has no objection to the allegation of multiple transactions in a single count, and further, no objection to the forfeiture of property involved in multiple transactions as part of the sentence for that single count.

2.  <u>Penalties</u>

Defendant understands and agrees that the statutory maximum penalties for the count to which Defendant is pleading guilty are

Page 2

as follows:  a fine in the amount of twice the amount of the
criminally derived property involved in the transactions, in this
case $9,000,000, pursuant to 18 U.S.C. § 1957(b)(2); five years
probation; restitution; and a $100 special assessment.
    3.    <u>Sentencing Guidelines</u>

    The U.S. Attorney and Defendant agree and understand that
because the crime charged in the Information occurred after
November 1, 1991, the United States Sentencing Guidelines
("U.S.S.G.") relating to the sentencing of organizations (Chapter
Eight of the United States Sentencing Guidelines) shall apply.
The parties agree that the 1999 U.S. Sentencing Commission
Guidelines Manual applies.  The parties further stipulate to the
factual predicates set forth below and agree that the following
is the proper application of the sentencing guidelines to the
Information:

> *§8C2.4/§2S1.2(c)(1)(B)  <u>Base Fine</u>*
> *In the case of violations of 18 U.S.C. § 1957, the amount of the organizational fine is the
> greater of $150,000 or 50 percent of the value of the funds* . . . . . . . . . . . . . . . . *$2,250,000*

> *§8C2.5  <u>Culpability Score</u>*
> *(a)    start with 5 points and apply subsections (b) through (g) below* . . . . . . . . . . . . . *5*

> *(b)    <u>Involvement in or Tolerance of Criminal Activity</u>*
> *(4) the organization had 50 or more employees and an individual within
> substantial authority personnel participated in, condoned, or was willfully
> ignorant of the offense* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

> *(g)    <u>Self-Reporting, Cooperation, and Acceptance of Responsibility</u>*
> *(2)    the organization fully cooperated in the investigation and clearly
> demonstrated recognition and affirmative acceptance of responsibility for
> its criminal conduct* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *-2*

> *Total*                                       *5*

> *§8C2.6  <u>Minimum and Maximum Multipliers</u>*

| Culpability Score | Minimum Multiplier | Maximum Multiplier |
|---|---|---|
| *5* | *1.0* | *2.0* |



Page 3

*§8C2.7  Guideline Fine Range -  Organizations*
*(a)     minimum of the guideline fine range ($2,250,000  x 1.0)  . . . . . . . . . . $2,250,000*
*(b)     maximum of the guideline fine range ($2,250,000 x 2.0)  . . . . . . . . . . $4,500,000*

*§8C2.9 Disgorgement*
*The court shall add to the fine determined under  §8C2.8 (Determining the Fine*
*Within the Range) any gain to the organization from the offense that has not and*
*will not be paid as restitution or by way of other remedial measures . . . . . . . . . $423,000*

Defendant is aware that it may have the right to challenge
its sentence and guilty plea on direct appeal. In consideration
of the concessions made by the U.S. Attorney in this Agreement,
Defendant knowingly and voluntarily waives its right to appeal:

(1)    Defendant's guilty plea and any other aspect of
       Defendant's conviction; and

(2)    The imposition by the District Court of the sentence
       agreed to by the parties, as set out in paragraph 5
       and, even if the Court rejects one or more positions
       advocated by the parties with regard to the application
       of the U.S. Sentencing Guidelines.

Defendant's waiver of rights to appeal and to bring
collateral challenges shall not apply to appeals or challenges
based on new legal principles in First Circuit or Supreme Court
cases decided after the date of this Agreement which are held by
the First Circuit or Supreme Court to have retroactive effect.

This Agreement does not affect the rights or obligations of
the United States as set forth in 18 U.S.C. § 3742(b), and the
U.S. Attorney therefore retains his appeal rights.

4.    Corporate Authorization

Defendant Metalor will provide to the U.S. Attorney and to
the Court written evidence, in the form of notarized resolutions
of Metalor's Board of Directors, certifying that Defendant is
authorized to waive its right to indictment, to plead guilty to
the Information in this case, and to enter into and comply with
all provisions of this agreement.  The resolution shall further
certify that the corporation and its designee are authorized to
take these actions and that all corporate formalities, including,
but not limited to, approval by Defendant's directors, required
for such authorization have been observed.

Page 4

Defendant Metalor agrees that J. William Codinha, P.C., as
attorney for Defendant and pursuant to duly authorized power of
attorney for Defendant, will be authorized to appear on its
behalf, enter its guilty plea and represent it for imposition of
sentence.

5.    Agreed Sentence

The U.S. Attorney and Defendant agree pursuant to Fed. R.
Crim. P. 11(c)(1)(C) that the following is the appropriate
disposition of this case:

a.    $2,673,000 fine (comprised of a $2,250,000 fine
determined within the guideline sentencing range, pursuant to
§8C2.8, plus $423,000 disgorgement, pursuant to §8C2.9) to be
paid as specified below in paragraph (d);

b. a five year term of probation, subject to the following
special conditions:

> 1.    Metalor shall institute and follow a
>       compliance program as described in paragraph
>       8 of this agreement; and

> 2.    Metalor shall comply with all applicable laws
>       and regulations and shall cooperate fully
>       with all local, state and federal officials,
>       including compliance with any and all
>       reasonable and lawful requests for
>       inspection, verification and monitoring of
>       its compliance program;

c.    $100 special assessment.

d.    Upon imposition of the sentence, the parties agree that
all fines and special assessments, totaling $2,673,100, be
payable forthwith.  Defendant agrees to convey the entire amount
of the fines and special assessment imposed, by wire transfer to
the Clerk of the United States District Court for the District of
Massachusetts.  Defendant agrees to make this payment within two
business days following the imposition of the sentence.

Page 5

6.    Conditions Precedent

The participation of the U.S. Attorney in the agreement set
forth in paragraph 5 of this agreement is conditional upon
Defendant's performance of the following obligations:

a.    Defendant shall provide full and truthful cooperation
      to the United States as set forth in paragraph 9 of
      this agreement;

b.    No later than two business days prior to sentencing, as
      scheduled by the Court, Defendant shall notify the
      United States that Defendant's counsel, Nixon, Peabody
      LLP is in possession of $2,673,100 in its client funds
      account with which to pay Defendant's fine and
      mandatory special assessment as provided in paragraph
      5; and

c.    Defendant shall comply with the remedial measures set
      forth in paragraph 8 of this agreement.

If Defendant fails to comply with these conditions prior to
sentencing, the U.S. Attorney shall be free to recommend any
sentence, including fine, he deems appropriate.

7.    Mandatory Special Assessment

Defendant agrees to pay the mandatory special assessment,
totaling $100, to the Clerk of the Court of the United States
District Court for the District of Massachusetts within two
business days after the date of sentencing, unless affirmatively
relieved of this obligation by the District Court.

8.    Remedial Measures

As a condition of Metalor's probation, Metalor agrees to
establish and maintain an effective compliance program (the
"Compliance Program") regarding the operation of its business and
the identity of its clients in order to ensure that Metalor is
dealing with legitimate clients and funds. Metalor further agrees
and understands that Immigration and Customs Enforcement (ICE)
has the right, at any time, to obtain records and question
Metalor employees to monitor compliance. Metalor further agrees
that the Compliance Program will be submitted to the United
States no later than sixty days after the date of entering into

Page 6

this plea agreement, but in any event, prior to the time of sentencing.

Metalor understands and agrees to assume all costs associated with the implementation, maintenance and Court oversight of this condition of probation.

As part of establishing and maintaining an effective compliance program and in order to meet the goal of eradicating customs fraud and Metalor's participation in financial transactions involving the proceeds of unlawful activity, Metalor will do the following:

a.   Designate a compliance officer: Metalor will designate a Compliance Officer and Compliance Committee to implement, oversee, and coordinate the Compliance Program.  The Compliance Officer will be provided with the authority to implement the Compliance Program and to use Metalor resources and personnel to achieve that end. Metalor will retain an outside accounting/auditing firm or law firm to review and audit the work of the Compliance Officer in implementing the Compliance Program on a quarterly basis and submit a quarterly report to an ICE designee, as designated by ICE. This outside auditor or law firm is subject to the approval of ICE, at the discretion of ICE.

b.   Implement customer acceptance and verification of customer information: Metalor will take reasonable measures to establish the identity of its customers and will endeavor to accept only those customers whose source of material or funds is legitimate.  All new customers must be approved by the Compliance Committee before Metalor engages in any business with that customer.

c.   Implement suspicious activities monitoring and reporting: Unusual or suspicious activities will be monitored through customer contact, third party information, monitoring of transactions, internal monitoring of customer accounts, and other appropriate actions.  All Metalor employees will have an affirmative duty to report and any all suspicious activities to the Compliance Officer.

Page 7

     d.    <u>Implement employee training</u>: Metalor will establish a training program on its Compliance Program for all appropriate employees. Annual training will include how to identify and follow-up on suspicious activities. In addition, employees will be informed about any major changes in applicable law.

     e.    <u>Internal Controls</u>: Metalor will implement internal policies, procedures, and controls to ensure application of the Compliance Program.

Metalor acknowledges that any material and substantial failure to implement and to maintain in effect the aforementioned compliance program for the full term of the probationary period shall constitute a breach of this agreement.

    9.    <u>Cooperation with Law Enforcement</u>

Defendant agrees to cooperate truthfully and completely with the United States in its investigation of possible violations of federal and state law and in any trial or other proceedings arising out of this investigation of Defendant and any of its present and former officers and employees.

    a.    Defendant understands and agrees that its cooperation obligations will require Defendant to do the following:

         i)    require that Defendant's directors, officers and employees disclose to law enforcement any and all information they have of criminal violations including money laundering, transactions involving the proceeds of crime and related offenses and any other financial crimes, as well as any import or export violations or other violations of U.S. Custom's regulations or requirements by Defendant or any other corporation or individual;

        ii)    provide technical expertise and assistance to law enforcement as may be requested in ongoing investigations, including but not limited to providing references as needed and purchasing gold from and selling gold to law enforcement at prevailing market rates;

Page 8

      iii) require that Defendant's directors, officers and employees disclose to law enforcement any prospective or ongoing criminal activity of which they become aware involving either Defendant's directors, officers and employees or their customers or prospective customers;

      iv) provide access to copies of original documents and records;

      v) require that, upon request and reasonable notice by the U.S. Attorneys, Defendant's directors, officers and employees make themselves available for interviews by law enforcement agents and for attendance at legal and judicial proceedings, including grand jury sessions, trials and other court hearings;

      vi) waive any claim of attorney-client privilege or work product protection with respect to the information disclosed to or obtained by Defendant's Counsel during the period from October 9, 2002 through October 2003, relating to the subject matters of the Information referred to in paragraph 1 of this agreement.

      vii) take all reasonable measures to ensure that Defendant's directors, officers and employees cooperate fully and truthfully with the United States and disclose all information with respect to their activities and those of others relating to violations of federal or state criminal laws.

    b.    Defendant further understands and agrees that its cooperation obligations will require the following with respect to work product prepared by Metalor's outside counsel which pertains to the U.S. Attorney's and U.S. Customs' investigation of Metalor:

      i) provide all notes and memoranda of interviews compiled and prepared by its counsel of interviews of Defendant's directors, officers and employees;

Page 9

       ii)    provide all notes and memoranda of interviews compiled and prepared by its counsel of interviews with individuals who are not directors, officers or employees of Defendant;

       iii) Defendant's counsel shall not be required by this agreement to give testimony regarding the subject matters described in paragraphs 9(b)(i) and (ii) above, except pursuant to a trial or grand jury subpoena or other court order.

As limited to such materials, Defendant and its counsel will provide a complete and full waiver of the attorney-client privilege and the work-product privilege, except as to those portions of materials containing the mental impressions and opinions of counsel. Defendant agrees that only portions of materials containing the mental impressions and opinions of its counsel will be redacted from the materials described in this paragraph. The U.S. Attorney agrees that production of such materials will not be construed as a general waiver of the attorney-client privilege and/or work product privilege as to any communications or materials beyond those referred to in paragraphs 9(b)(i) and (ii)above. Defendant also agrees that its outside counsel will provide an index of materials in outside counsel's files pertaining to their internal investigation of Metalor's involvement in customs violations and their participation in financial transactions involving the proceeds of unlawful activity.

       c.   If Defendant complies with all the terms of this agreement, the United States will, upon request of Defendant, advise the Court and any federal, state or local government agency, including licensing agencies or authorities, of the nature and extent of any cooperation provided by Defendant.

       d.   In return for Defendant's full and truthful cooperation, the U.S. Attorney agrees not to use any information provided by Defendant pursuant to this agreement (or any information directly or indirectly derived therefrom) against Defendant in any criminal case except: in a prosecution for perjury or obstruction of justice; in a prosecution for making a false statement after the date of this agreement; in a prosecution or other proceeding relating to any crime of violence; in a prosecution or other proceeding relating to a violation of any provision of Title 26 of United States Code. The United States reserves the

Page 10

right to respond fully and completely to all requests for
information by the District Court and U.S. Department of
Probation in this matter.  All such disclosures, however,
shall be made subject to the provisions concerning the use
of this information by the District Court and U.S.
Department of Probation contained in U.S.S.G. §1B1.8(a) and
the commentary thereto.

      e.    If the U.S. Attorney determines that Defendant has
breached this agreement by knowingly making any false, incomplete
or misleading statement, or by knowingly providing any false,
incomplete or misleading information, to any law enforcement
personnel, grand jury or court, the U.S. Attorney may terminate
this agreement as set forth below, and may also prosecute
Defendant for any and all offenses that could be charged against
Defendant in the District of Massachusetts, including, but not
limited to, false statements and perjury.

      10.   Criminal Liability

      Provided that the Defendant complies with the terms of this
agreement, the United States Attorney agrees not to seek
additional criminal prosecution against Defendant for the conduct
described in the Information or any other conduct that has been
disclosed to the United States Attorney by Defendant involving
its activities in South America that have occurred prior to the
date of this agreement.

      This agreement is not intended to, and does not, satisfy or
affect the criminal liability of any current or former officer,
director, employee, agent or representative of the Defendant.

      11.   Forfeiture

      Defendant will forfeit to the United States any and all
assets subject to forfeiture pursuant to 18 U.S.C. § 982(a) as a
result of Defendant's guilty plea.  The assets to be forfeited
include, but are not limited to, cash, stocks, bonds,
certificates of deposit, tangible and intangible personal
property and real estate.

      The asset to be forfeited is the following:   (a) $423,000 in
United States currency.  Defendant admits that this currency is
subject to forfeiture on the ground that it constitutes property,
real or personal, involved in money laundering offenses in
violation of 18 U.S.C. § 1957, or property traceable to such

Page 11

property, as charged in Count One of the Information.     Defendant
therefore consents to the forfeiture of all of Defendant's
interest in such forfeitable asset to the United States.    The
forfeiture may be carried out criminally, civilly, or
administratively in the government's discretion.

Prior to sentencing, Defendant agrees to assist law
enforcement agents and government attorneys in locating,
liquidating, recovering, returning to the United States, and
forfeiting all forfeitable assets, wherever located, and in
whatever names the assets may be held.  Defendant shall promptly
take whatever steps are deemed necessary by the U.S. Attorney
and/or the Bureau of Immigration and Customs Enforcement to
transfer possession of, and clear title to, all forfeitable
assets to the United States.  Such steps may include, but are not
limited to, executing and surrendering all title documents, and
signing consent decrees of forfeiture, deeds, sworn statements
relating the factual bases for forfeiture, and any other
documents deemed necessary by the government to complete the
criminal, civil, or administrative forfeiture proceedings which
may be brought against the assets identified in this section and
against any other forfeitable assets involved in or related to
any of the criminal acts charged in the Information.

The forfeitures set forth herein shall not satisfy or offset
any fine, restitution, cost of imprisonment, or other penalty
imposed upon Defendant, nor shall the forfeitures be used to
offset Defendant's tax liability or any other debt owed to the
United States.

In addition to all other waivers or releases set forth in
this Agreement, Defendant hereby waives any and all claims
arising from or relating to the forfeitures set forth in this
section, including, without limitation, any claims arising under
the Excessive Fines Clause of the Eighth Amendment or the Double
Jeopardy Clause of the Fifth Amendment, or to the United States
Constitution, or any other provision of state or federal law.

The United States District Court for the District of
Massachusetts shall retain jurisdiction to enforce the provisions
of this section.

Page 12

12.  <u>Probation Office Not Bound By Agreement</u>

     The sentencing dispositions agreed upon by the parties and
their respective calculations under the Sentencing Guidelines are
not binding upon the United States Probation Office.  Defendant's
plea will be tendered pursuant to Fed. R. Crim. P. 11(a)(1)(C).
Defendant cannot withdraw its plea of guilty unless the
sentencing judge rejects the plea agreement.  If the sentencing
judge rejects the plea agreement, this agreement shall be null
and void at the option of either the United States or the
Defendant.  In this regard the Defendant hereby waives any
defense to any charges which it might otherwise have under any
statute of limitations or the Speedy Trial Act.

13.  <u>Information For Presentence Report</u>

     Defendant agrees to provide all information requested by the
U.S. Probation Office concerning its assets, income and financial
condition.

14.  <u>Civil Liability</u>

     By entering into this agreement, the U.S. Attorney does not
compromise any civil liability, including but not limited to any
tax liability, which Defendant may have incurred or may incur as
a result of its conduct and its plea of guilty to the charges
specified in paragraph 1 of this agreement.

15.  <u>Withdrawal of Plea Agreement</u>

     Should Defendant's guilty plea not be accepted by the Court
for whatever reason, or later be withdrawn on motion of
Defendant, this agreement shall be null and void at the option of
the U.S. Attorney.

16.  <u>Breach of Agreement</u>

     If the U.S. Attorney determines that Defendant has failed
materially to comply with any provision of this agreement, or
have committed any crime during the pendency of this agreement,
the U.S. Attorney may, at his sole option, be released from his
commitment under this agreement in its entirety by notifying
Defendant, through counsel or otherwise, in writing.  The U.S.
Attorney may also pursue all remedies available to him under the
law, irrespective of whether he elects to be released from his
commitments under this agreement.  Defendant recognizes that no

Page 13

such breach by Defendant of any obligation under this agreement shall give rise to grounds for withdrawal of its guilty plea. Defendant understands that should any such breach of this agreement occur, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial, hearing or for sentencing purposes, any statements made by its employees and agents, and any information, materials, documents or objects provided by Defendant to the U.S. Attorney pursuant to this agreement without any limitation. In this regard, Defendant hereby waives any defense to any charges which it might otherwise have under any statute of limitations or the Speedy Trial Act.

    17.    Who Is Bound By Agreement

    This agreement is limited to the United States Attorney for the District of Massachusetts and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities not identified above.

    18.    Complete Agreement

    This agreement is the complete and only agreement between the parties. No promises, agreements or conditions have been entered into other than those set forth in this letter. This agreement supersedes prior understandings, if any, of the parties, whether written or oral. This agreement cannot be modified other than in a written memorandum signed by the parties or on the record in court.

    If this letter accurately reflects the agreement entered into between the U.S. Attorney and Defendant, please sign the Acknowledgments of Plea Agreement below, and affix Defendant's corporate seal. Please also have the signatures of the corporate signatories notarized. In addition, please provide a copy of requisite authorization to enter into this agreement, by

Page 14

Defendant's directors (the original to be provided to the Court).
Please return the original of this letter to Assistant United
States Attorney Allison D. Burroughs.

                    Sincerely,

                    MICHAEL J. SULLIVAN
                    United States Attorney

By:

                    JAMES FARMER
                    Chief, Criminal Division

                    STEPHEN P. HEYMANN
                    Deputy Chief, Criminal Division

                    ALLISON D. BURROUGHS
                    Assistant U.S. Attorney

Page 15

<u>ACKNOWLEDGMENT OF PLEA AGREEMENT</u>

Metalor USA Refining Corporation

I have read this letter of agreement in its entirety, and have discussed it with the directors of Metalor USA Refining Corporation and with its attorneys. I hereby represent that I am an officer of Defendant corporation and that I am duly authorized to enter into this agreement. I hereby acknowledge that this letter of agreement fully sets forth the agreement of Metalor USA Refining Corporation with the United States Attorney for the District of Massachusetts. I further state that there have been no additional promises or representations made to or for the benefit of Metalor USA Refining Corporation by any officials of the United States in connection with this matter.

_____

For Defendant -
METALOR USA REFINING CORPORATION

Date: 1 2 / 2 3 / 6 ?

Corporate Seal:

Notary Acknowledgment and Seal:

I certify that this plea agreement letter has been reviewed by duly authorized officials of Metalor USA Refining Corporation who understand its terms.

_____    Date: 01/07/04

J. WILLIAM CODINHA, P.C.

_____    Date: 01/07/04

MELISSA BAYER TEARNEY, ESQUIRE
Attorneys for Metalor USA Refining Corporation

**Légalisation :** Vu par moi, notaire, pour légalisation de la signature apposée ci-contre
par : -------------------------------------------------------------------------------------------------------------
• Monsieur Roland Markus Held, né le 1$^{er}$ juin 1963, originaire de Zollikofen/BE, à
  Bienne/BE, en qualité de directeur de Metalor USA Refining Corporation ; -------------
Neuchâtel, le vingt-trois décembre deux mille trois (23 décembre 2003) --------------------
*Rép. Gén. 68 N° 155*  -----------------------------------------------------------------------------------------