UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| United States of America, </br></br> v. </br></br> Metalor USA Refining Corporation, </br></br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Cr. No. 04 CR 10003 – 001 - MEL </br> ) </br> ) </br> ) </br> ) </br> ) |

**METALOR'S UNOPPOSED MOTION FOR EARLY TERMINATION OF PROBATION**

Metalor U.S.A. Refining Corporation ("Metalor" or the "Company") respectfully moves, pursuant to Fed. R. Crim. P. 32.1(b) and 18 U.S.C. §3564(c), for early termination of the five-year probationary period imposed by this Court in January 2004. Under §3564(c), a defendant is eligible for early termination of probation once one year of probation has been completed. Here, Metalor has already completed nearly four and a half years of probation and has satisfied all the conditions of the sentence imposed by this Court. Metalor's performance while on probation, as set forth below, has been exemplary. Metalor seeks to have this Court end Metalor's probationary period approximately six months prior to the time when it would otherwise expire due to certain business exigencies explained herein. Lastly, both the U.S. Attorney's Office and the United States Probation Office for the District of Massachusetts have advised undersigned counsel that they do not intend to file an opposition to this motion.

As further grounds for this Motion, Metalor states as follows:

11113943_1.DOC

1. On January 14, 2004, Metalor entered a plea of guilty to engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. §1957.

2. On January 22, 2004, this Court sentenced Metalor to a term of probation of five years, a fine of $2,250,000, a special assessment fee of $100, and ordered the Company to forfeit $423,000. Metalor has paid all of these monetary amounts in full.

3. Pursuant to 18 U.S.C. §3564(c) this Court is authorized to "terminate a term of probation previously ordered . . . if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice."

4. Metalor's motion to reduce its five year term of probation by approximately six months is based in substantial measure on the Company's outstanding performance during the past four and a half years since this Court imposed sentence. Since that time, Metalor has positioned itself as an industry leader in establishing the standard for compliance programs and has driven partnerships with law enforcement to encourage greater industry transparency and the prevention and detection of illicit activity.

5. In February 2007, Metalor hired Steven Crogan to help administer its compliance with the terms of its Probation. Mr. Crogan previously spent 32 years with U.S. Immigration and Customs Enforcement ("ICE"). For nearly 20 years Mr. Crogan served in a supervisory role, directing, among other things, money laundering investigations and supervising dozens of special agents and other personnel. Mr. Crogan has administered Metalor's AML policy in his capacity as Compliance Officer and Security Director by ensuring the effective implementation of the AML compliance program, conducting oversees training of company employees and external customers, and by routinely evaluating and reporting suspicious activities and compliance concerns. See Affidavit of Steven Crogan at ¶¶ 3-6, attached hereto as Attachment

A (hereinafter "Crogan Aff.") . Mr. Crogan regularly provides direct assistance to government and law enforcement agencies, such as ICE's Transparency Trade Unit in the United States, and to foreign governments, to facilitate investigations and prevention measures in the precious metals industry. Crogan Aff. at ¶¶ 5-6.

6. Metalor has instituted a robust and credible Anti-Money Laundering ("AML") Compliance Program. See Crogan Aff. at Tab 1. This 56-page AML policy covers topics including risk assessment, new customer approval, monitoring of customer transactions, and reporting of suspicious activity. As part of this AML compliance program, Metalor has ensured that each of its customers constitutes a legitimate business and retains AML procedures in accordance with 31 C.F.R. §103.140 (warranting AML programs for dealers in precious metals, precious stones, and jewels). Id. Moreover, Metalor has conducted training programs and undertaken due diligence with respect to over six dozen international customers. Crogan Aff. at ¶¶ 3, 5.

7. As one aspect of Metalor's AML compliance program, the Company has also established a Compliance Committee which has successfully supervised over 16 quarterly reviews and substantive monitoring in accordance with the conditions of Metalor's AML compliance program. Crogan Aff. at ¶ 4.

8. Metalor's outstanding performance while on probation is clear from the reports that have been prepared by its independent monitor, Affiliated Monitors, Inc. ("AMI"), which has been monitoring its performance under the terms of its Probation. AMI reported in its April 10, 2008 report, for example, that Metalor's compliance with its AML policies and its implementation of the terms if its probation was "excellent" and Metalor was "fully cooperative throughout the monitoring process." See Crogan Aff. at Tab 2, pp. 3 and 47. As the Court will

note, this 48-page report, the ninth such quarterly review conducted by AMI, is a comprehensive review of Metalor's performance reflecting interviews of employees, reviews of records, reports, correspondence files, and minutes of the Compliance Committee meetings. Id.

9. AMI further reported that Metalor fully embraced the important role of the independent monitor, stating that, "there is nothing that we have asked for which has been withheld." See AMI Report at p. 47. AMI also praised the work of Mr. Crogan, stating that he "continues to be very active in monitoring and investigating suspicious activities or matters which he believes requires additional scrutiny even if they do not rise to the level of suspicious activity" by contacting government officials and traveling to customer locations worldwide. Id.

10. Metalor has also voluntarily initiated numerous AML trainings both in domestic and international jewelry centers, largely at Mr. Crogan's direction. Crogan Aff. at ¶ 5. Examples of these efforts include:

a) March 2007: AML training for government personnel at the American Embassy in Bogota, Colombia;

b) September 2007: Due diligence briefings for potential refining business customers and the Minister of Colombian Mining and the Director of the Colombian Customers Exportation Section ("DIAN"), in Medellin, Colombia during the International Mining Expo;

c) February 2008: AML training of 85 Diamond and Jewelry Dealers which included staff from ICE's Los Angeles office and members of the Los Angeles Police Department;

a) March 2008: AML program for twelve ICE Agents and Criminal Intelligence Analysts assigned to the ICE Transparency Trade Unit, at ICE headquarters in Washington, D.C.;

b) March 2008: AML diligence and compliance presentation to the International Precious Metals Institute Security Council in New Orleans;

c) April 2008: AML briefing to the Drug Enforcement Administration ("DEA") and ICE Country Attaches at the United States Embassies in Santo Domingo, Dominican Republic, and Bogota, Colombia.

Crogan Aff. at ¶ 5.

11.     Metalor has also cooperated with law enforcement throughout its probationary period by providing intelligence and investigative leads. From 2004 through 2008, Metalor has provided over 50 intelligence referrals to law enforcement in the United States and abroad. Crogan Aff. at ¶ 6. These included reports on referrals of suspicious precious metals trading activities to ICE and DEA officials in Boston, New York, Toronto, Miami, Los Angeles, the Dominican Republic, Colombia, Panama, and Mexico. In forging partnerships with law enforcement and initiating programs to increase transparency, Metalor has embraced both the letter and the spirit of the terms of its probation agreement. Id.

12.     According to Mr. Crogan, Metalor's management has been a strong ally in his efforts to adopt an aggressive compliance program. As he notes in his affidavit, "as a former law enforcement official with responsibility for enforcement of the money laundering laws, I have been particularly impressed with the manner in which Metalor has not only fulfilled the specific requirements of its probationary terms, but also with the manner in which it has completely supported my efforts to move aggressively in this area to become an industry leader in the implementation of AML policies, to be a source for law enforcement and to otherwise commit itself to adopting preventative measures to ensure that it complies with the AML laws." Crogan Aff. at ¶ 8.

13.     Lastly, in the wake of its conviction, Metalor replaced its top management at its U.S. operations, hiring new individuals in five senior positions, including General Manager, Chief Financial Officer, Director of Sales and Marketing-Refining, Operations Manager, and Director of Security and AML Compliance. Crogan Aff. at ¶ 7.

14.     In addition to its very strong performance while on Probation and the fact that it has already completed 90% of the imposed term of probation, Metalor further submits that its motion for early termination is supported by its emerging business needs. As a leading international refiner of precious metals, Metalor Technologies International SA, based in Neuchatel, Switzerland, has retained investment bank Credit Suisse to effect the potential sale of the Company or a possible public offering. The existence of Metalor's outstanding term of probation poses considerable risk to the timing and valuation of this transaction. Crogan Aff. at ¶ 9.

15.     The market value of Metalor Technologies International SA is directly affected by the value of precious metals, which are currently trading at very high levels. A prompt resolution of Metalor's outstanding probation would enable the Company to proceed with its sale expeditiously while benefiting from existing market conditions within the precious metals industry. Id. If the Company were required to wait until early 2009 to proceed with this transaction, it could have substantial financial consequences for the Company in light of the price volatility in the precious metals markets. Id.

16.     Undersigned counsel has discussed its request for early termination of Metalor's probation with Assistant U.S. Attorney, Paul Levenson, Chief of the Economic Crimes Unit in the United States Attorney's Office for the District of Massachusetts. AUSA Levenson has advised undersigned counsel that his office does not intend to file an opposition to this motion.

17.     Undersigned counsel has also discussed this motion with both John Bocon, the Chief Probation Officer at the United States Probation Office for the District of Massachusetts and Probation Officer Alicia Howarth. Both individuals reported that in light of Metalor's full

compliance, and the additional circumstances surrounding this motion, the United States Probation Office does not oppose Metalor's request for early termination of its probation.

18.    Further, the Boston ICE office was contacted about this request for early termination. ICE Special Agent in Charge, Bruce Foucart, stated that while his office does not take positions on cases it has formerly investigated, Metalor's actions while on probation were commendable. See Crogan Aff. At Tab 3.

WHEREFORE, for the reasons cited above, Metalor respectfully requests that this Court enter an Order terminating Metalor's probation effective July 1, 2008, or at an earlier date selected by the Court.

Respectfully submitted,

June 17, 2008

By: /s/ Joshua S. Levy
Joshua S. Levy
BBO #563017
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7281

Yvonne O. Osirim
BBO#670012
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7548

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of June, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Paul Levenson, counsel of record for the Office of the United States Attorney, District of Massachusetts.

/s/ *Joshua S. Levy*
Joshua S. Levy