**Metalor Technologies USA – AML Policy and Program**

Business address;
Telephone;
Fax;
Identification of customer representative;
Authority of representative (oral description)
Nature of business and purpose for transaction (oral description).

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

Metalor Technologies USA – AML Policy and Program

## MONITORING OF CUSTOMER TRANSACTIONS

All transactions between Metalor and its precious metal refining customers will be subject to monitoring by the AML Compliance Officer, and will be specifically reviewed and reported as follows:

1.      Wires and Checks Report.  All wire transfers and checks will be monitored for unusual activity, specifically including multiple wires on the same day as possible evidence of structuring, and wires to persons who are not approved customers in Metalor's commercial database.  Some wire transactions will be selected by the AML Compliance Officer for review of underlying commercial documents.

2.      Sales and Ranks Report.  IT monthly reports showing precious metal, especially gold, settled between customer and Metalor, as well as gold bullion sales and returns, and refining lots delivered to Metalor, will be reviewed and analyzed for increases that might indicate business out of the normal course.  Such indications will be followed by inquiries to sales personnel and, where the AML Compliance Officer deems it necessary, to the customers.

3.      New Customer Report.  All new customers in the commercial transaction database will be identified by IT, reported to the Compliance Officer, and checked for AML approval.

4.      Customer Information Changes Report.  All changes in customer information in the commercial transaction database, such as customer name, address, contact persons, contact information and customer status will be identified by IT, reported to the Compliance Officer, and checked for unusual activity.

5.      Customers that have been identified by the Compliance Officer as needing added attention will be monitored for all transactions.  This will include, but not be limited to, customers for whom some suspicion has been raised.

Monitoring reports will generated monthly regarding items 1-4 above.  Monitoring will be conducted as indicated or needed regarding item 5.

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

Metalor Technologies USA – AML Policy and Program

## SUSPICIOUS ACTIVITIES

A suspicious activity is something occurring in the course of Metalor business that isn't normal, that doesn't seem to work or doesn't seem rational, or that appears to be in violation of law or Company policy. Every Metalor employee has the duty to report suspicious activity within the Company.

There are two categories of "suspicious activity" and the distinction is important: (1) "internal suspicious activity" and (2) "regulatory suspicious activity."

An internal suspicious activity can be virtually anything, perhaps completely innocent. A Metalor employee should not worry about knowing "beyond a reasonable doubt" that what he or she has observed is "bad." A report of such activity may first be made informally, to an immediate supervisor or other management employee, and may be quickly resolved within the Company upon finding a rational explanation. By maintaining a low threshold for internal suspicious activity, the Company encourages reporting by all employees of a wide variety of activity, much of which will be resolved.

A regulatory suspicious activity is a higher level. It will start with a report of internal suspicious activity, but it is activity that, after review and evaluation, raises a concern that should, in the judgment of the AML Compliance officer, be brought to the attention of government authorities. A report to government authorities of regulatory suspicious activity will be made by the Compliance Officer.

Identification of Internal Suspicious Activities

Internal suspicious activities may occur in any part of Metalor's business. They will be specifically looked for in monitoring of customer transactions and accounts, but may also be observed in direct customer contact (e.g. meetings, discussions, in country visits), or in information received from other parties (e.g. other customers) or pubic sources (e.g. newspapers, internet).

Examples of Suspicious Activities are described below. This list is not intended to be exhaustive but provides areas of concern that should be reported internally:

- Metalor is informed by law enforcement or government contacts that a customer is under suspicion or investigation.
- Metalor receives credible reports from other customers or business contacts that a customer is under suspicion or investigation, or otherwise has cause to believe that customer's business is of a suspicious nature.
- A customer's account shows a sudden increase in transactions in a short span of time.
- There is a sudden increase in business from one area/country or customer.
- A customer requests frequent changes in wire instructions.
- A customer requests excessive routing of payment through different countries or banks.

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

**Metalor Technologies USA – AML Policy and Program**

- A customer makes multiple wire transfers of payments from different foreign locations.
- A customer's makes numerous currency or cashiers check transactions.  (Metalor will not accept such methods of payment.)
- A customer requests wire transfers to unrelated third parties.
- A customer requests wire transfers to or from a country identified as a money-laundering risk or a bank secrecy haven.
- A customer's account shows inflows of funds or other assets well beyond the known income or resources of the customer.
- A customer requests that a transaction be processed in such a manner to avoid the Company's normal documentation requirements.
- A customer is unwilling or reluctant to provide complete and accurate information.
- A customer is doing business with or through previously suspicious or disapproved companies or persons.
- A customer changes the company name.
- A customer repackages metal during pickup at Metalor facilities.
- A customer has unusual pick-up or delivery procedures.
- A customer requests unusual payment terms, including but not limited to:
  - Making more than two related payments each under $10,000 for a single bullion purchase.
  - Making payments for bullion purchases from multiple sources.
  - Making payments from banks/countries other than the customer's reference bank or home country.
  - Receiving multiple smaller payments for a single refining settlement.
  - Receiving payments from banks/countries other than the customer's reference bank or home country.

Reporting of Internal Suspicious Activities

Every Metalor employee has the duty to report suspicious activity within the Company.  The initial report may be informal, to an immediate supervisor or other management employee.  If a Metalor employee does not want to report to an immediate supervisor or local management, the initial report can be made to the Compliance Officer, or to the General Manager.  It can be made to Metalor's Chief Executive Officer, at the Metalor headquarters in Switzerland.

Although the Company encourages informal initial reporting, every report of suspicious activity must also be reported further to the Compliance Officer, who will keep track and maintain files of such reports.  If a written report has not already been prepared, the Compliance Officer will open a file and prepare a written report.  The Compliance Committee will be advised of suspicious activity that has not been promptly resolved as non-suspicious.

Dealing with Internal Suspicious Activities

The Compliance Officer will determine (1) whether the evidence of Suspicious Activity is credible; (2) whether there is a reasonable explanation for it; and (3) appropriate further

**This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.**
**© Metalor Technologies USA, 2007, all rights reserved**

investigative actions to be taken. If the report was resolved at a lower level, the Compliance Officer shall ether affirm or reject that resolution, or may take additional steps, such as inquiries of other Metalor employees, direct communications with the customer, or calls to government agencies or other outside sources.

If suspicions are credible and no reasonable explanation is forthcoming, the Compliance Officer shall use his or her best judgment to determine if it should cancel the business relationship and immediately close the account, and whether the suspicious activity should be reported to the government

The Compliance Officer may determine that the business relationship may continue with specific conditions, or with greater monitoring, or such other conditions as he or she deems appropriate. If the Compliance Officer decides to terminate the business relationship, the customer is to be informed, any final settlement completed and the customer paid any settlements owning to them for lots in-house. In the case of trades or bullion sales, a decision to break the trade or sale can be made even if it results in a revenue loss for Metalor.

The termination of a business relationship because of suspicious activity requires that all accounts with the customer be terminated. IT will be directed to inactivate the account or accounts. The AML Compliance Officer will notify all appropriate Metalor personnel, such as the CFO, Inside Sales, Trading, and the Accounting groups, that all accounts are closed.

All steps taken in response to an internal suspicious activity report will be documented in the Customer File and such documentation shall be maintained for a minimum period of five (5) years. A database of customers that have had accounts closed, denied or placed on "watch" status must be updated and maintained.

Regulatory Suspicious Activity Reports

If the Compliance Officer determines that an internal report of suspicious activity should be reported to the government, he or she will make such a report. A report of suspicious activity to the government involves procedures and liabilities, and strict provisions regarding privacy and disclosure, that are substantially different from those that may be used for internal reporting and review. FinCEN put some of these considerations in the Federal Register preamble to the AML Rule:

> Any dealer, or any of its officers, directors, employees or agents, that makes a voluntary SAR filing shall not be liable to any person under Federal, state or local law, or under an arbitration contract, for such a filing or for failing to provide notice of the filing to the subject of the filing. [31 U.S.C. 5318(g)(3)] We also caution, however, that a dealer, or any of its officers, directors, employees, or agents, that makes a voluntary SAR filing *may not* notify any person involved in the reported transaction that a SAR has been filed. [31 U.S.C. 5318(g)(2)(A)]

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

**Metalor Technologies USA – AML Policy and Program**

Accordingly, to maintain order and accuracy, as well as protection from liability, the Company will not authorize any employee other than the Compliance Officer to officially speak for the Company in making such suspicious activity reports to government agencies.

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

Metalor Technologies USA – AML Policy and Program

# TRAINING OF EMPLOYEES

Metalor will train all employees, as appropriate to their positions and responsibilities, to assist the Company in implementing its AML Policy and Program, including requirements of anti-money-laundering laws and regulations, specific procedures for collection and verification of customer information, and how to identify and report suspicious activities.

1. Training of All Metalor Employees

All Metalor employees, whatever their position, will be introduced to the Metalor AML Compliance Program, and will be trained in reporting suspicious activity. This training will include a definition and examples of suspicious activity, and procedures for reporting. All employees will be assured that reports, even if subsequently found to be mistaken, should be made and will not be subject to discipline.

2. Training of All Metalor Management Employees

All Metalor management employees will be trained about the Metalor AML Compliance Program. This training will include:

- the definition and practice of money laundering;
- the use of precious metals in money laundering;
- the potential vulnerability of Metalor to being used by money launderers;
- the Bank Secrecy Act, as amended by the USA PATRIOT Act, as the legal foundation for anti-money laundering responsibilities and programs;
- the oversight responsibilities of the U.S. Treasury and the Financial Crimes Enforcement Network (FinCEN);
- the Metalor AML Policy and Program and its procedures, with particular attention to suspicious activities, observation and reporting.

3. Training of Specific Metalor Employees

A. Sales, Customer Service

All employees who enter into discussions and/or negotiations with customers will be trained in the manner and scope described above for management employees, and:

- information requirements for customer approval;
- procedures for customer approval by the Compliance Committee;
- restrictions on transactions with customers and potential customers;
- monitoring of customer transactions;
- communications with customers and potential customers;
- suspicious activities related to negotiations; observation and reporting.

B. Accounting

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

**Metalor Technologies USA – AML Policy and Program**

All employees who send, receive and payments to and from customers will be trained in the manner and scope described above for management employees, and:

- conditions on payments received from customers;
  - types of payments acceptable;
  - persons from whom payment is acceptable;
- conditions on payments to or on behalf of customers;
  - types of payments acceptable;
  - persons to whom payment is acceptable;
- suspicious activities related to receipts and payments; observation and reporting;
- Bank Secrecy Act required reports regarding receipts and payments.

### C. Trading

All employees who trade precious metals, whether for hedging or for other Company or customer requirements, will be trained in the manner and scope described above for management employees, and:

- vulnerabilities of trading to money laundering;
- suspicious activities related to trading; observation and reporting.

### D. Compliance Committee

Members of the Compliance Committee will be trained by the Compliance Officer in the full scope of implementation of the AML Policy and Program.

### E. Compliance Officer

The Compliance Officer will determine the scope of training that he or she requires to carry out the duties of the AML Policy and Program, including training outside of the Company, and will undertake such training.

### F. New Employees

All new Metalor employees will be trained as appropriate for their positions as described above before engaging in any customer transactions.

All of the training described above take place at least annually, and more frequently as the Compliance Committee deems necessary, or as an audit recommends.

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

Metalor Technologies USA – AML Policy and Program

## COMPLIANCE WITH BANK SECRECY ACT

The AML Rule for a dealer in precious metals expressly requires that it include compliance with the Bank Secrecy Act:

> "Policies, procedures, and internal controls developed and implemented by a dealer under this section shall include provisions for complying with the applicable requirements of the Bank Secrecy Act (31 U.S.C. 5311 *et seq.*)."
> 31 CFR 103.40(c)

As the preamble to those regulations set forth (70 FR 33714, June 9, 2005), the Bank Secrecy Act requires a dealer in precious metals:

> "(1) to establish an anti-money laundering program, (2) to file IRS/FinCEN Form 8300, [footnote omitted] (3) to file FinCEN Form TD F 90–22.1 [footnote omitted], and (4) to file FinCEN Form 105. [footnote omitted]"

This section of the Metalor AML Program describes these requirements in greater detail and the compliance steps to be taken by Metalor.

BSA Requirement (1) to establish an anti-money laundering program;

Metalor complies with requirement (1) through the establishment and implementation of this AML Program.

BSA Requirement (2) to file IRS/FinCEN Form 8300 relating to currency in excess of $10,000 received in a trade or business (31 CFR 103.30)(form and instructions in annexes);

Any person engaged in a trade or business must report a transaction in which he or she has received more than $10,000 in cash, money orders, travelers' checks, cashiers' checks or bank checks.

And there are three possible complications to watch for:

First, cash means foreign currency as well as U.S. currency. Metalor must report its receipt of payments in the currency of any country. The dollar threshold - $10,000 – is in US dollars, so receipt of foreign currency must be counted at the current exchange rate.

Second, although this law is primarily concerned with cash, it includes other monetary instruments that people sometimes use like cash. All of these listed monetary instruments are essentially anonymous, like cash. They do not, on their face, provide a trace back to a specific bank account of the person who is making the payment. These monetary instruments may be traceable through an issuing bank, but on their face they are not traceable to the person who is paying Metalor **and** an account of that person.

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

Metalor Technologies USA – AML Policy and Program

These kinds of monetary instruments are not always required to be reported. They are not included if they have a face value greater than $10,000. (This is because such monetary instruments are tracked through another banking system.) They are only included in Metalor's reporting requirement if they have a face value of $10,000 or less. And even then, they are not included in Metalor's reporting requirement unless they are used in combination with some other payment, with a total of all types that adds up to more than $10,000. So if Metalor receives one such monetary instrument, and one alone, that is used to pay in total for a transaction, that monetary instrument is not required to be reported, whatever its amount. These monetary instruments are included in Metalor's reporting requirement only if they are used in combination with others, and/or with cash, in a way that seems to be designed to avoid the reporting amount of $10,000. So, to sum up, receipt by Metalor of money orders, travelers' checks, cashiers' checks or bank checks is only reportable if they are individually for a value less than $10,000, **and** are used in combination, with cash or others of this type of 'anonymous' monetary instruments, for a transaction that itself exceeds $10,000.

Third, and probably most important, this reporting requirement does not go away by breaking up a large transaction into smaller payments or smaller transactions. A money launderer may try to break up a large transaction into many smaller transactions to avoid a report. As set forth above, if Metalor receives multiple payments that are each less than $10,000, even if the payments are a year apart, they are reportable as soon as the total received actually exceeds $10,000. This reporting requirement applies only if the multiple smaller payments relate to a single transaction, but there may be a legal presumption that they do. Multiple transactions will be assumed to be related to each other automatically if they are made within 24 hours of each other, and may be assumed to be a single transaction over any time period if Metalor has reason to know that the multiple transactions are related. For example, a customer who has no business reason for buying 20 oz. of gold each week for $8000, for four consecutive weeks, may be assumed to be actually buying 80 oz. in a single structured transaction. If a Metalor customer seems to be trying to break up one large transaction into many little ones, i.e. many payments that are each less than $10,000, such a structured method of payment may indicate money laundering, and must be reported as if only one single payment had been made. These reports must be made to both IRS and FinCEN using IRS/FinCEN Form 8300.

Metalor employees must be careful to avoid discussing structured payments with customers, such as small payments over time. Such a discussion could be seen as being about avoiding a required government report, and a person who aids another in attempting to avoid the requirements of the BSA may be found guilty of a crime. If a Metalor customer openly expresses a desire to avoid government reporting requirements, that should be reported to the Compliance Officer as suspicious activity.

BSA Requirement (3) to file FinCEN Form TD F 90–22.1 to report foreign bank and financial accounts (31 CFR 103.24)(form and instructions in annexes);

Metalor does not currently maintain any foreign bank and/or financial accounts, but will file Form TD F 90–22.1 if the circumstances arise in accordance with the instructions attached.

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

**Metalor Technologies USA – AML Policy and Program**

BSA Requirement (4) to file FinCEN Form 105 to report international transportation of currency or monetary instruments (31 CFR 103.23)(form and instructions in annexes).

This legal requirement is usually encountered by airplane travelers, but it is actually somewhat broader. Any person must report when he or she receives cash or monetary instruments of more than $10,000 that have been transported, mailed or shipped into the United States. So if Metalor has a customer outside of the United States who sends payment into the United States to Metalor, this law might be applicable.

Again, as above, currency means the currency of any country, not just U.S. dollars. Treasury regulations define "monetary instruments" in somewhat the same way as the requirement above, but also includes personal checks and business checks:

> (i) Currency;
> (ii) Traveler's checks in any form;
> (iii) All negotiable instruments (including personal checks, business checks, official bank checks, cashier's checks, third-party checks, promissory notes (as that term is defined in the Uniform Commercial Code), and money orders) that are either in bearer form, endorsed without restriction, made out to a fictitious payee, or otherwise in such form that title thereto passes upon delivery;
> (iv) Incomplete instruments (including personal checks, business checks, official bank checks, cashier's checks, third-party checks, promissory notes (as that term is defined in the Uniform Commercial Code), and money orders) signed but with the payee's name omitted;

This definition does not include personal checks and business checks of the type normally received by Metalor, i.e. payable to Metalor. The term "monetary instruments" is being used here to describe monetary instruments that are not completely filled in, and thus can be used almost like cash, those that can be passed from person to person without an additional signature, and that transfer title at the point that physical possession is passed. A check that is made payable to Metalor is not that kind of a monetary instrument, and is not subject to this reporting requirement.

The instructions for FinCEN Form 105, Report of International Transportation of Currency or Monetary Instruments make the same point: "Monetary instruments do not include checks or money orders made payable to the order of a named person which have not been endorsed or which bear restrictive endorsements."

It is also very clear that wire transfers are not included in either of these requirements. The general reporting requirement, 31 CFR § 103.23, expressly excludes transfers that do not involve physical delivery of an instrument: "A transfer of funds through normal banking procedures which does not involve the physical transportation of currency or monetary instruments is not required to be reported by this section."

    Conclusions and Compliance Steps

**This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.**
**© Metalor Technologies USA, 2007, all rights reserved**

Metalor Technologies USA – AML Policy and Program

The BSA reporting requirements do not apply to the receipt by Metalor of:

1. wire transfers to a Metalor bank account, in any amount;
2. personal checks or business checks that are expressly made payable to Metalor, in any amount;
3. bank checks or cashiers checks that are expressly made payable to Metalor in an amount greater than $10,000.

The BSA reporting requirements do apply to the receipt by Metalor of:

4. cash in an amount greater that $10,000 received in one transaction or two or more related transactions, (or even less if other 'anonymous' monetary instruments are received that bring the total over $10,000 – see below).

Cash and anonymous methods of payments should be examined and may need to be reported on an IRS/FinCEN Form 8300. If the cash is received from outside of the country, it triggers a requirement to also file a FinCEN Form 105.

5. money orders, travelers' checks, cashiers' checks or bank checks in amounts less than $10,000, if they are received together with cash and/or other of the same type of monetary instruments (e.g. money orders, travelers' checks) such that the total value received by Metalor exceeds $10,000;

This triggers a BSA requirement to file an IRS/FinCEN Form 8300. This structuring of a larger payment into several smaller payments should also be reported internally to the Compliance Officer as suspicious activity.

The receipt by Metalor of:

6. cash or travelers' checks, or checks or other monetary instruments (of any kind) that are not complete, specifically that are not made out to Metalor (or anyone else), that are received from outside of the country, and that are in an amount greater than $10,000

triggers a BSA requirement to file a FinCEN Form 105. Note again that any structuring of cash, money orders, travelers checks, cashiers' checks or bank checks that total more than $10,000 will still trigger the reporting requirements.

IRS/FinCEN Form 8300 and FinCEN Form 105 must be filed promptly. These reports will be filed by the Compliance Officer, and so information of Metalor's receipt of these kinds of payments must be promptly transmitted to that person. Any questions or doubts should be resolved by reporting to the Compliance Officer.

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

## COMPLIANCE OFFICER

Federal regulations regarding the AML Rule for Dealers in Precious Metals, Stones or Jewels provide that the AML Compliance Officer will be responsible for ensuring that:

> (i) The anti-money laundering program is implemented effectively;
> (ii) The anti-money laundering program is updated as necessary to reflect changes in the risk assessment, requirements of this part, and further guidance issued by the Department of the Treasury; and
> (iii) Appropriate personnel are trained in accordance with paragraph (c)(3) of this section. 31 CFR 103.140(c)(2)

The qualifications for the person or persons filling the position are described in the Federal Register preamble to the AML Rule as follows:

> "The person (or group of persons) should be competent and knowledgeable regarding BSA requirements and money laundering issues and risks." 70 FR 33710, June 9, 2005

> "In all cases, the person responsible for the supervision of the overall program must be an officer or employee of the dealer." 70 FR 33711, June 9, 2005

> "In all cases, however, the compliance officer should be thoroughly familiar with the operations of the business itself and with all aspects of your anti-money laundering program, as well as with the requirements of the BSA and applicable FinCEN forms, and should have read carefully all applicable documents issued by FinCEN or on FinCEN's Web page." 70 FR 33714, June 9, 2005

The authority to be assigned to the AML Compliance Officer is also described in the Federal Register preamble – the AML Compliance Officer

> "should be empowered with full responsibility and authority to develop and enforce appropriate policies and procedures throughout the dealer's business." 70 FR 33710, June 9, 2005

Pursuant to such regulation and guidance, Metalor's Compliance Officer has overall responsibility for, and is authorized and directed to implement, oversee and coordinate, the AML Policy and Program. The Compliance Officer's authority includes use of all necessary and appropriate resources and personnel to achieve those ends. The responsibilities of the Compliance Officer include the following:

- Ensure compliance with all applicable government AML laws and regulations, including changes as they occur.
- Ensure required government reports are filed.
- Implement, maintain and ensure compliance with internal AML Policy, Program and Procedures.
- Ensure relevant documents, reports and databases are current and maintained.

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

**Metalor Technologies USA – AML Policy and Program**

- Establish and maintain a monitoring program of customer transactions to detect and flag significant changes and other circumstances.
- Ensure that all Metalor employees are trained as appropriate to their positions and responsibilities, not less than annually, to implement Metalor's AML Policy and Program.
- Implement and maintain an internal reporting system for suspicious activities and compliance issues.
- Receive, review, evaluate and investigate reports of suspicious activities from Metalor's employees, customers and business associates.
- Respond to inquiries regarding Metalor's AML Policy and Program.
- Hire an outside auditor to review and audit the implementation of the AML Program, and to report to the General Manager, on a quarterly basis.
- Report periodically upon all implementation of the AML Policy and Program to the General Manager, and to such other senior management as the board of directors, or committee authorized by them for this purpose, may direct.

**This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.**
**© Metalor Technologies USA, 2007, all rights reserved**

# COMPLIANCE COMMITTEE

Metalor's Compliance Committee is established to consult with and assist the Compliance Officer to implement, oversee and coordinate the AML Policy and Program. The Compliance Officer and the Compliance Committee, especially as a group, are intended to have the qualifications that have been described in the Federal Register preamble to the AML Rule:

> "The person (or group of persons) should be competent and knowledgeable regarding BSA requirements and money laundering issues and risks." 70 FR 33710, June 9, 2005

> "In all cases, the person responsible for the supervision of the overall program must be an officer or employee of the dealer." 70 FR 33711, June 9, 2005

> "In all cases, however, the compliance officer should be thoroughly familiar with the operations of the business itself and with all aspects of your anti-money laundering program, as well as with the requirements of the BSA and applicable FinCEN forms, and should have read carefully all applicable documents issued by FinCEN or on FinCEN's Web page." 70 FR 33714, June 9, 2005

The Compliance Committee accordingly is made up of persons holding the following Metalor positions:

> Compliance Officer,
> Chief Financial Officer,
> Manager of Human Relations

The role of the Committee is to question, probe, and assist the Compliance Officer in creation, modification and implementation of the AML Program. In addition, the Compliance Committee has an oversight responsibility with regard to the Compliance Officer, and may report directly to senior management if it deems that circumstances warrant or require such steps.

The Committee shall meet at times and places as called by the Compliance Officer, or by any other member of the Committee. Its considerations and decisions shall be recorded in minutes.

Any two members shall constitute a quorum at a meeting of the Compliance Committee and may take any action that the Committee is authorized or directed to take. A member may participate in Committee meetings by telephone.

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

To:      Metalor Customers
Re:      Request for Customer Information
         Anti-Money Laundering Program
From:  Compliance Officer

Dear Metalor Customer:

You are being requested to provide information and documents to Metalor Refining, and you may question why. Please let me explain.

All dealers in precious metals have been classified as financial institutions by the U.S. Congress since 1970. (If you would like to have your lawyer check this, the source is the Bank Secrecy Act, 31 U.S.C. section 5312(a)(2)). In 2001, Congress required every financial institution to have an anti-money laundering program (USA PATRIOT Act, section 352, 31 U.S.C. section 5318(g)). In 2005 the United States Treasury implemented this Congressional requirement through a regulation, 31 CFR 103.140, effective as of January 1, 2006. Metalor is in compliance with this legal requirement. Because you may also be a dealer in precious metals, subject to the same federal law, we are asking that you certify either that you are in compliance, or are not subject to this requirement.

The essence of an AML Program is that we must know our customers – who you are and what you do. Knowing who you are means ensuring that we have your legal name, and that we are reasonably sure that you are the person you say you are. If you are an organization, we need to have the names of the owners. We will then check your names against government lists of criminals, terrorist financiers, and persons who have been blocked from doing business with United States businesses. It is unlikely that you will appear on those lists, but we need to check.

Knowing what you do means having an understanding that you have a legitimate reason to buy our products, or have a legitimate source for materials that you sell to us. So, for example, if you are a manufacturer of gold jewelry, we understand that you have a legitimate need to buy gold, and also have a legitimate source of scrap gold for refining. We are not likely to follow that line of inquiry further. If, on the other hand, you are, say, a postal clerk, or own a grocery store, we may question why you claim to have a large amount of gold for sale. (And yes, we receive proposals like that, not infrequently.)

We assure you that we will not use your information and documents for any other purpose, and they will not be seen by any person without AML responsibilities. We maintain these documents in locked cabinets in locked rooms in a facility with 24 hour security. If the government requires that we open our records, we will do so. But your records will not be open to any other persons. In no circumstances will we sell or give away your AML information to others.

Please feel free to contact me if you have questions or concerns.

                                        Compliance Officer

29 August 2007 – Page 49 of 56
This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

Metalor Technologies USA – AML Policy and Program

**Metalor Technologies USA – AML Policy and Program**

## METALOR TECHNOLOGIES USA
## CUSTOMER INFORMATION
## PAGE 1

Customer Name: _____

Customer Business Addresses:

    1. Headquarters: _____

    city: _____ state/province:_____ postal code: _____

    country: _____

    2. Customer Location(s) Doing Business With Metalor: _____

    _____

    city: _____ state/province:_____ postal code: _____

    country: _____

Primary contact: name _____  title: _____

    phone: _____ fax: _____ email: _____

Secondary contact: name _____  title: _____

    phone: _____ fax: _____ email: _____

Description of Customer Business (e.g., mining, jewelry manufacturing):

_____

_____

_____

_____

Description of Customer's Transactions with Metalor (e.g., refining of production scrap):

_____

_____

_____

_____

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

Metalor Technologies USA – AML Policy and Program

# Annex 1

## Customer ID Forms

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

**Metalor Technologies USA – AML Policy and Program**

## METALOR TECHNOLOGIES USA
## CUSTOMER INFORMATION
### PAGE 2

Customer Government Identification Number (e.g., U.S. Employer Identification Number, Taxpayer Identification Number): _____

Customer Form of Business Entity: _____ corporation,

                                               _____ partnership,

                                               _____ individual proprietorship,

                                               _____ other: _____

If Customer is a Corporation:

Jurisdiction of incorporation: _____

Location of government records: office name: _____

        address: street or post office box: _____

        city: _____ state/province:_____ postal code: _____

        country: _____

        telephone: _____ website: _____

Owner(s) of Company (include persons or entities with 10% or greater ownership, and all unnamed beneficial owners – a copy of a government-issued photo ID document, such as a passport or U.S. State Driver's License, must also be included):

        Name: _____

        address: street or post office box: _____

        city: _____ state/province:_____ postal code: _____

        country: _____

        telephone: _____

If Customer is a Partnership:

Identity of General Partner (or other person with full liability– a copy of a government-issued photo ID document, such as a passport or U.S. State Driver's License, must also be included):

        Name: _____

        address: street or post office box: _____

        city: _____ state/province:_____ postal code: _____

        country: _____

        telephone: _____

**This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.**
**© Metalor Technologies USA, 2007, all rights reserved**

Metalor Technologies USA – AML Policy and Program

# METALOR TECHNOLOGIES USA
## CUSTOMER INFORMATION
## PAGE 3

Trade references:

    1) Name: _____

    Person to Contact: Name _____ Title: _____

    address: street or post office box: _____

    city: _____ state/province:_____ postal code: _____

    country: _____ telephone: _____

    2) Name: _____

    Person to Contact: Name _____ Title: _____

    address: street or post office box: _____

    city: _____ state/province:_____ postal code: _____

    country: _____ telephone: _____

    3) Name: _____

    Person to Contact: Name _____ Title: _____

    address: street or post office box: _____

    city: _____ state/province:_____ postal code: _____

    country: _____ telephone: _____

Bank references:

    1) Name of Bank: _____

    Person to Contact: Name _____ Title: _____

    address: street or post office box: _____

    city: _____ state/province:_____ postal code: _____

    country: _____ telephone: _____

    2) Name of Bank: _____

    Person to Contact: Name _____ Title: _____

    address: street or post office box: _____

    city: _____ state/province:_____ postal code: _____

    country: _____ telephone: _____

Lawyer reference:

    Name: _____

    address: street or post office box: _____

    city: _____ state/province:_____ postal code: _____

    country: _____ telephone: _____

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

Metalor Technologies USA – AML Policy and Program

**METALOR TECHNOLOGIES USA
CUSTOMER INFORMATION
PAGE 4**

Certification of Customer AML Regulatory Status
Regulated or Non-Regulated Dealer in Precious Metals

The undersigned certifies that _____ is:

Name of Customer

(please mark one)

_____ in compliance with the requirement of 31 CFR 103.140 to develop and implement
an anti-money laundering program for dealers in precious metals.

_____ not subject to the requirement of 31 CFR 103.140 to develop and implement an
anti-money laundering program for dealers in precious metals.

Date: _____          Signature: _____

                                 Name: _____
                                 Title: _____

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

Metalor Technologies USA – AML Policy and Program

**Annex 2**

**Suspicious Activity Report**
**Form TD F 90-22.56**

**(This is the SAR for**
**Money Services Businesses,**
**suggested by FinCEN for use by**
**Dealers in Precious Metals)**

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

Metalor Technologies USA – AML Policy and Program

Annex 3

**Bank Secrecy Act**
**Report Forms**

**Form 8300 – Report of Cash Payments**
**Form TD F 90-22.1 – Report of Foreign Bank Accounts**
**Form 105 – Report of International Transport of Currency**

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

Metalor Technologies USA – AML Policy and Program

Annex 4

**AML Rule for Dealers**
**In Precious Metals, Stones or Jewels**

**70 FR 33702, June 9, 2005**

This document is CONFIDENTIAL and access is restricted to Metalor Technologies USA and designees.
© Metalor Technologies USA, 2007, all rights reserved

| Department of the Treasury | REPORT OF FOREIGN BANK AND FINANCIAL ACCOUNTS | | 1 |
|---|---|---|---|
| **TD F 90-22.1** (Rev. 7/00) SUPERSEDES ALL PREVIOUS EDITIONS | Do **NOT** file with your Federal Tax Return | | OMB No.1506-0009 |

| 1 Filing for Calendar Year | 2 Type of Filer | 3 Taxpayer Identification Number |
|---|---|---|
| Y  Y  Y  Y | a ☐ Individual    b ☐ Partnership    c ☐ Corporation    d ☐ Fiduciary | |

## Part I    Filer Information

| 4 Last Name or Organization Name | 5 First Name | 6 Middle Initial |
|---|---|---|

| 7 Address (Number, Street, and Apt. or Suite No.) | 8 Date of Birth M  M  D  D  Y  Y  Y  Y |
|---|---|

| 9 City | 10 State | 11 Zip/Postal Code | 12 Country | 13 Title (Not necessary if reporting a personal account.) |
|---|---|---|---|---|

| 14 Are these accounts jointly owned? a ☐ Yes   b ☐ No | 15 Number of joint owners | 16 Taxpayer Identification Number of joint owner (if known) |
|---|---|---|

| 17 Last Name or Organization Name | 18 First Name | 19 Middle Initial |
|---|---|---|

## Part II    Information on Financial Accounts

| 20 Number of Foreign Financial Accounts in which a financial interest is held | 21 Type of account  a ☐ Bank    b ☐ Securities    c ☐ Other _____ |
|---|---|

| 22 Maximum value of account a ☐ Under $10,000     c ☐ $100,000 to $1,000,000 b ☐ $10,000 to $99,999   d ☐ Over $1,000,000 | 23 Account Number or other designation |
|---|---|

| 24 Name of Financial Institution with which account is held | 25 Country in which account is held |
|---|---|

| 26 Does the filer have a financial interest in this account? a ☐ Yes   b ☐ No    If no, complete boxes 27-35. | 27 Last Name or Organization Name of Account Holder |
|---|---|

| 28 First Name | 29 Middle Initial | 30 Taxpayer Identification Number |
|---|---|---|

| 31 Address (Number, Street, and Apt. or Suite No.) | 32 City |
|---|---|

| 33 State | 34 Zip/Postal Code | 35 Country |
|---|---|---|

| 36 Signature | 37 Date M  M  D  D  Y  Y  Y  Y |
|---|---|

This form should be used to report a financial interest in, signature authority, or other authority over one or more financial accounts in foreign countries, as required by the Department of the Treasury Regulations (31 CFR 103). No report is required if the aggregate value of the accounts did not exceed $10,000. **SEE INSTRUCTIONS FOR DEFINITION.** File this form with:

## U.S. Department of the Treasury, P.O. Box 32621, Detroit, MI 48232-0621.

### PRIVACY ACT NOTIFICATION

Pursuant to the requirements of Public Law 93-579 (Privacy Act of 1974), notice is hereby given that the authority to collect information on TD F 90-22.1 in accordance with 5 USC 522a(e) is Public Law 91-508; 31 USC 5314; 5 USC 301; 31 CFR 103.

The principal purpose for collecting the information is to assure maintenance of reports where such reports or records have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings. The information collected may be provided to those officers and employees of any constituent unit of the Department of the Treasury who have a need for the records in the performance of their duties. The records may be referred to any other department or agency of the United States upon the request of the head of such department or agency for use in a criminal, tax, or regulatory investigation or proceeding. The information collected may also be provided to appropriate state, local, and foreign law enforcement and regulatory personnel in the performance of their official duties.

Disclosure of this information is mandatory. Civil and criminal penalties, including in certain circumstances a fine of not more than $500,000 and imprisonment of not more than five years, are provided for failure to file a report, supply information, and for filing a false or fraudulent report. Disclosure of the Social Security number is mandatory. The authority to collect is 31 CFR 103. The Social Security number will be used as a means to identify the individual who files the report.

## Continuation Page

This side can be copied as many times as necessary in order to provide information on all accounts.

Form TD F 90-22.1

| 1 Filing for Calendar Year Y Y Y Y | 3 Taxpayer Identification Number | 4 Filer Last Name or Business Name | Page Number OF |
|---|---|---|---|

| 2 Type of Filer | | 21 Type of Account | | 22 Maximum value of account | |
|---|---|---|---|---|---|
| a ☐ Individual  c ☐ Corporation | | a ☐ Bank  c ☐ Other | | a ☐ Under $10,000  c ☐ $100,000 to $1,000,000 | |
| b ☐ Partnership  d ☐ Fiduciary | | b ☐ Securities _____ | | b ☐ $10,000 to $99,999  d ☐ Over $1,000,000 | |

| 23 Account Number, or other designation | 24 Name of Financial Institution with which account is held |
|---|---|

| 25 Country in which account is held | 26 Does the filer have a financial interest in this account? a ☐ Yes  If no, complete boxes 27-35. b ☐ No | 27 Last Name or Organization Name of Account Owner |
|---|---|---|

| 28 First Name | 29 Middle Initial | 30 Taxpayer Identification Number | 31 Address (Number, Street, and Apt. or Suite No.) |
|---|---|---|---|

| 32 City | 33 State | 34 Zip/Postal Code | 35 Country |
|---|---|---|---|

| 2 Type of Filer | | 21 Type of Account | | 22 Maximum value of account | |
|---|---|---|---|---|---|
| a ☐ Individual  c ☐ Corporation | | a ☐ Bank  c ☐ Other | | a ☐ Under $10,000  c ☐ $100,000 to $1,000,000 | |
| b ☐ Partnership  d ☐ Fiduciary | | b ☐ Securities _____ | | b ☐ $10,000 to $99,999  d ☐ Over $1,000,000 | |

| 23 Account Number, or other designation | 24 Name of Financial Institution with which account is held |
|---|---|

| 25 Country in which account is held | 26 Does the filer have a financial interest in this account? a ☐ Yes  If no, complete boxes 27-35. b ☐ No | 27 Last Name or Organization Name of Account Owner |
|---|---|---|

| 28 First Name | 29 Middle Initial | 30 Taxpayer Identification Number | 31 Address (Number, Street, and Apt. or Suite No.) |
|---|---|---|---|

| 32 City | 33 State | 34 Zip/Postal Code | 35 Country |
|---|---|---|---|

| 2 Type of Filer | | 21 Type of Account | | 22 Maximum value of account | |
|---|---|---|---|---|---|
| a ☐ Individual  c ☐ Corporation | | a ☐ Bank  c ☐ Other | | a ☐ Under $10,000  c ☐ $100,000 to $1,000,000 | |
| b ☐ Partnership  d ☐ Fiduciary | | b ☐ Securities _____ | | b ☐ $10,000 to $99,999  d ☐ Over $1,000,000 | |

| 23 Account Number, or other designation | 24 Name of Financial Institution with which account is held |
|---|---|

| 25 Country in which account is held | 26 Does the filer have a financial interest in this account? a ☐ Yes  If no, complete boxes 27-35. b ☐ No | 27 Last Name or Organization Name of Account Owner |
|---|---|---|

| 28 First Name | 29 Middle Initial | 30 Taxpayer Identification Number | 31 Address (Number, Street, and Apt. or Suite No.) |
|---|---|---|---|

| 32 City | 33 State | 34 Zip/Postal Code | 35 Country |
|---|---|---|---|

This form should be used to report a financial interest in, signature authority, or other authority over one or more financial accounts in foreign countries, as required by the Department of the Treasury Regulations (31 CFR 103). No report is required if the aggregate value of the accounts did not exceed $10,000. **SEE INSTRUCTIONS FOR DEFINITION.** File this form with:

## U.S. Department of the Treasury, P.O. Box 32621, Detroit, MI 48232-0621.

**Paperwork Reduction Act.** The estimated average burden associated with this collection of information is 10 minutes per respondent or recordkeeper, depending on individual circumstances. Comments regarding the accuracy of this burden estimate, and suggestions for reducing the burden should be directed to the Department of the Treasury, Financial Crimes Enforcement Network, P.O. Box 39, Vienna, VA 22183. You are not required to provide the requested information unless a form displays a valid OMB control number.

## INSTRUCTIONS

### General Instructions

**Who Must File this Report** Each Unites States person, who has a financial interest in or signature authority, or other authority over any financial accounts, including bank, securities, or other types of financial accounts in a foreign country, if the aggregate value of these financial accounts exceeds $10,000 at any time during the calendar year, must report that relationship each calendar year by filing TD F 90-22.1 with the Department of the Treasury on or before June 30, of the succeeding year.

### Exceptions

An officer or employee of a bank which is subject to the supervision of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Office of Thrift Supervision, or the Federal Deposit Insurance Corporation need not report that he has signature or other authority over a foreign bank, securities or other financial account maintained by the bank, if the officer of employee has NO personal financial interest in the account.

An officer or employee of a domestic corporation whose equity securities are listed upon national securities exchanges or which has assets exceeding $10 million and 500 or more shareholders of record need not file such a report concerning the other signature authority over a foreign financial account of the corporation, if he has NO personal financial interest in the account and he has been advised in writing by the chief financial officer of the corporation that the corporation has filed a current report, which includes that account.

Report any financial account (except a military banking facility as defined in these instructions) that is located in a foreign country, even if it is held at an affiliate of a United States bank or other financial institution. Do not report any account maintained with a branch, agency, of other office of a foreign bank or other institution that is located in the United States, Guam, Puerto Rico, and the Virgin Islands.

### General Definitions

**United States Person** The term "United States person" means (1) a citizen or resident of the United States, (2) a domestic partnership, (3) a domestic corporation, or (4) a domestic estate or trust.

**Financial Account** Generally includes any bank, securities, securities derivatives or other financial instruments accounts. Such accounts generally also encompass any accounts in which the assets are held in a commingled fund, and the account owner holds an equity interest in the fund. The term also means any savings, demand, checking, deposit, time deposit, or any other account maintained with a financial institution or other person engaged in the business of a financial institution.

**Account in a Foreign Country** A "foreign country" includes all geographical areas located outside the United States, Guam, Puerto Rico, and the Virgin Islands.

**Financial Interest** A financial interest in a bank, securities, or other financial account in a foreign country means an interest described in either of the following two paragraphs:

(1) A United States person has a financial interest in each account for which such person is the owner of record or has legal title, whether the account is maintained for his or her own benefit or for the benefit of others including non-United States persons. If an account is maintained in the name of two persons jointly, or if several persons each own a partial interest in an account, each of those United States persons has a financial interest in that account.

(2) A United States person has a financial interest in each bank, securities, or other financial account in a foreign country for which the owner of record or holder of legal title is: (a) a person acting as an agent, nominee, attorney, or in some other capacity on behalf of the U.S. person; (b) a corporation in which the United States person owns directly or indirectly more than 50 percent of the total value of shares of stock; (c) a partnership in which the United States person owns an interest in more than 50 percent of the profits (distributive share of income); or (d) a trust in which the United States person either has a present beneficial interest in more than 50 percent of the assets or from which such person receives more than 50 percent of the current income.

**Signature or Other Authority Over an Account** A person has signature authority over an account if such person can control the disposition of money or other property in it by delivery of a document containing his or her signature (or his or her signature and that of one or more other persons) to the bank or other person with whom the account is maintained.

Other authority exists in a person who can exercise comparable power over an account by direct communication to the bank or other person with whom the account is maintained, either orally or by some other means.

**Military Banking Facility** Do not consider as an account in a foreign country, an account in an institution known as a "United States military banking facility" (or "United States military finance facility") operated by a United States financial institution designated by the United States Government to serve U.S. Government installations abroad, even if the United States military banking facility is located in a foreign country.

### Filing Information

When and Where to File - This report must be filed on or before June 30 each calendar year with the Department of the Treasury, Post Office Box 32621, Detroit, MI 48232-0621, or it may be hand carried to any local office of the Internal Revenue Service for forwarding to the Department of the Treasury, Detroit, MI.

## EXPLANATIONS FOR SPECIFIC ITEMS

### Consolidated Reporting

A corporation which owns directly or indirectly more than 50 percent interest in one or more other entities will be permitted to file a consolidated report on TD F 90-22.1, on behalf of itself and such other entities provided that a listing of them is made part of the consolidated report. Such reports should be signed by an authorized official of the parent corporation.

If the group of entities covered by a consolidated report has a financial interest in 25 or more foreign financial accounts, the reporting corporation need only note that fact on the form in Item 20. It will, however, be required to provide detailed information concerning each account when so requested by the Secretary or his delegate.

### Item 14

If the filer owns the account jointly with any other party, then yes should be marked.

### Item 15

If the filer holds this account with only one (1) other party, and all accounts listed are held jointly with that party, then complete items 16, 17, 18, and 19. Otherwise leave these items blank.

**Item 20**

If the filer holds a financial interest in more than 25 foreign financial accounts, indicate the number in this box and do not complete any further items in Part II.

Any person who lists more than 25 foreign financial accounts in item 20 must when requested by the Department of the Treasury provide all the information called for in Part II.

**Item 22**
Account Valuation

For item 22, the maximum value of an account is the largest amount of currency and non-monetary assets that appear on any quarterly or more frequent account statement issued for the applicable year. If periodic account statements are not so issued, the maximum account asset value is the largest amount of currency and non-monetary assets in the account at any time during the year. Convert foreign currency by using the official exchange rate at the end of the year. In valuing currency of a country that uses multiple exchange rates, use the rate which would apply if the currency in the account were converted into United States dollars at the close of the calendar year.

The value of stock, other securities or other non-monetary assets in an account reported on TD F 90-22.1 is the fair market value at the end of the calendar year, or if withdrawn from the account, at the time of the withdrawal.

For purposes of item 22, if you had a financial interest in more than one account, each account is to be valued separately in accordance with the foregoing two paragraphs. If you had a financial interest in one or more but fewer than 25 accounts, and you are unable to determine whether the maximum value of these accounts exceeded $10,000 at any time during the year, complete Part II or III for each of these accounts.

**Item 26**

United States Persons with Authority Over but No Financial Interest in an Account - Except as provided in the following paragraph, you must state the name, address, and identifying number of each owner of an account over which you had authority, but if you complete items 27-35 for more than one account of the same owner, you need identify the owner only once. If you complete items 27-35 for one or more accounts in which no United States person had a financial interest, you may state on the first line of this item, in lieu of supplying information about the owner, "No U.S. person had any financial interest in the foreign account." This statement must be based upon the actual belief of the person filing this form after he or she has taken reasonable measures to ensure its correctness.

If you complete Part II for accounts owned by a domestic corporation and its domestic and/or foreign subsidiaries, you may treat them as one owner and write in the space provided, the name of the parent corporation, followed by "and related entities," and the identifying number and address of the parent corporation.

**Item 36**

**Signature**

This report must be signed by the person named in Part I. If the report is being filed on behalf of a partnership, corporation, or fiduciary, it must be signed by an authorized individual.

**Penalties**

For criminal penalties for failure to file a report, supply information, and for filing a false or fraudulent report, see 31 USC 5322(a), 31 USC 5322(b), and 18 USC 1001.



# Financial Crimes Enforcement Network
## Department of the Treasury

February 13, 2003

**ANNOUNCEMENT
TO ALL
MONEY SERVICES BUSINESSES**

The suspicious activity reporting (SAR) requirement applicable to the money services businesses (MSBs) industry has been in effect for more than one year. MSBs were advised in October 2002, that a new form had been created specifically for the MSB industry entitled *Suspicious Activity Reporting by Money Services Business* (Form TD F 90-22.56). A copy of the form is attached.

MSBs must begin using this new form immediately for all suspicious activity reporting. Some businesses are still using the form entitled *Suspicious Activity* (TD F 90-22.47) which is designed specifically for banks. MSBs were initially instructed to use this bank form as an interim step until the MSB suspicious activity form was completed. It is important that all MSBs use the new form since it is specifically tailored to your industry to capture the information that law enforcement needs to combat money laundering and other financial crimes.

MSBs can order additional copies of the new form by calling the IRS Forms Distribution Center at 1-800-829-3676. Be sure to provide the correct title, *Suspicious Activity Reporting by Money Services Business,* and form number, TD F 90-22.56. The form can also be printed off the following websites:

- www.fincen.gov under "Regulatory/BSA Forms and Filing Information," and
- www.msb.gov under "Forms."

If you file large volumes of these forms, MSBs are encouraged to file on magnetic media. Magnetic Media Specifications are also posted on the websites listed above.

Questions and or requests for additional information may be directed to the FinCEN Regulatory Helpline at 1-800-949-2732 or the Detroit Computing Center Hotline at 1-800-800-2877.

Attachment

#

**TD F 90-22.56**

Treasury Form
October 2002

# Suspicious Activity Report by Money Services Business

▶ Please type or print. Always complete entire report (see instructions).



OMB No. 1506-0015

1 Check the box if this report corrects a prior report. (See instructions, page 7) ☐

2 Type of filer (check **all** financial services/products offered)

a ☐ Issuer of money order(s)    b ☐ Redeemer of money order(s)    c ☐ Seller of money order(s)

d ☐ Issuer of traveler's check(s)    e ☐ Redeemer of traveler's check(s)    f ☐ Seller of traveler's check(s)

g ☐ Money transmitter    h ☐ U.S. Postal Service (see instructions)    i ☐ Other _____

## Part I    Subject Information

3 ☐ Multiple subjects (See instructions, page 7)

4 Subject type  (check only one box)

a ☐ Purchaser/Sender    b ☐ Payee/Receiver    c ☐ Both ("a" & "b")    d ☐ Other

5* Individual's last name or Entity's full name    6* First name    7* Middle initial

8* Address

9* City    10* State    11* Zip code    12* Country (if not U.S.)

13* Government issued identification (if available)

a ☐ Driver's license/State I.D.    b ☐ Passport    c ☐ Alien registration    d ☐ Other _____

e Number    f Issuing state or country _____

14 * SSN/TIN (individual) or EIN (entity)    15 Date of birth    MM  DD  YYYY    16 Phone number (include area code) (   )    —    17 Vehicle Lic.# / State (Optional)    a number    b state

18 Customer number, if any    19 Occupation/Type of business

20* Endorser's (individual or Entity) name, if any    21* Bank account number of endorser, if any    22* Bank of first deposit, if any

## Part II    Suspicious Instrument/Money Transfer Information

23 Financial services involved in suspicious transaction(s)  (Check **all** that apply.)

a ☐ Money Order    b ☐ Traveler's Check    c ☐ Money Transfer    d ☐ Other _____

24 * Date or date range of suspicious activity    From ___/___/___ MM  DD  YYYY    To ___/___/___ MM  DD  YYYY    25 Total dollar amount involved in suspicious activity    $ |_____| .00

26.1* Serial number(s) of [a] money order(s) ☐ or [b] traveler's check(s) ☐    c Issuer name

d Starting No.    e Ending No.

26.2 Serial number(s) of [a] money order(s) ☐ or [b] traveler's check(s) ☐    c Issuer name

d Starting No.    e Ending No.

26.3 Serial number(s) of [a] money order(s) ☐ or [b] traveler's check(s) ☐    c Issuer name

d Starting No.    e Ending No.

27.1* Money transfer number    a Issuer name _____    27.2 Money transfer number    a Issuer name _____

b No.    b No.

Catalog No. XXXXXX